# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VICKI LYNN COEHOORN,** | )    NO.   ED CV 16-373-KS |
| | ) |
| **Plaintiff,** | ) |
| **v.** | )    **MEMORANDUM OPINION AND ORDER** |
| | ) |
| **NANCY A. BERRYHILL**,[1] **Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

## INTRODUCTION

Plaintiff filed a Complaint on March 1, 2016, seeking review of the Commissioner's denial of her applications for Title II Social Security disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI") benefits. (*See* Dkt. No. 1.) All parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United

---

[1]   The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

States Magistrate Judge. (*See* Dkt. Nos. 11, 12, 13.) On December 30, 2016, the parties filed a "Joint Stipulation" (sometimes hereinafter "Joint Stip.") (Dkt. No. 23), in which plaintiff seeks an order reversing the Commissioner's decision and awarding benefits. (*See* Joint Stip. at 13-15.) The Commissioner requests that the decision be affirmed or, in the alternative, that the case be remanded for further administrative proceedings. (Joint Stip. at 15-17.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

This is the second time that plaintiff has sought relief in this District Court from a denial of her applications for DIB and SSI benefits by an Administrative Law Judge ("ALJ"). (*See, e.g.,* AR 40-56, 1307-20.)

On July 7, 2010, plaintiff protectively filed a Title II application for DIB, and on July 27, 2010, plaintiff protectively filed a Title XVI application for SSI benefits. (*See* AR 43.) Plaintiff has consistently claimed a "disability onset date" of July 2, 2010. (*See* AR 43, 1310.) Plaintiff was born on December 23, 1958, and she was 51 years old at the time she filed her applications for benefits. (*See* AR 51, 62.) Under agency guidelines, plaintiff was "an individual closely approaching advanced age" on the alleged disability onset date (*i.e.,* July 2, 2010). (*See* 20 CFR §§ 404.1563, 416.963; AR 1319.) She has a limited education and is able to communicate in English. (AR 1319.)

On December 2, 2011, a hearing was held before ALJ Mark B. Greenberg. (AR 61-86.) Plaintiff, represented by counsel, and a vocational expert ("VE") Louis Mas, both testified at the hearing. (AR 62-81 (plaintiff); 82-85 (VE).) The VE described plaintiff's past relevant work ("PRW") as a "meat packer" and a "machine operator." (AR 83.) The VE said that the machine operator job was listed in the Dictionary of Occupational Titles

("DOT") as No. 590.362-014, an occupation of medium exertional level, and plaintiff had done the machine operator job for the past 15 years. (AR 83.)

ALJ Greenberg found that plaintiff met the insured requirements of the Social Security Act through March 31, and, at step one of the evaluative process, 2013 found plaintiff had not engaged in substantial gainful activity ("SGA") since July 2, 2010, the alleged onset of disability date. (AR 45.)

At step two, the ALJ determined that plaintiff had six "severe" medically determinable impairments: (1) fibromyalgia, (2) migraine headaches, (3) a history of a "left foot crush injury"; (4) "status post laparoscopic cholecystectomy"; (5) a history of hepatitis C; and (6) depression. (*See* AR 45.)[2] The ALJ found, at step three, that plaintiff's impairments did not meet or equal any impairment listed I 20 CFR Part 404,Subpart P, Appendix 1. (AR 45-46.) Before turning to step four, the ALJ next determined that plaintiff had the residual functional capacity ("RFC") to perform "light work," finding, among other things, that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently," and "stand and/or walk for no more than 2 hours in an 8-hour workday." (AR 46-47.)

At step four, after considering plaintiff's age, education, work experience, and RFC, ALJ Greenberg concluded that plaintiff could not perform her PRW. (*See* AR 45-51.) However, based on the VE's testimony at the first hearing, the ALJ concluded that plaintiff could perform the other jobs of "small parts assembler," DOT 706.684-022, or "production assembler," DOT 706.687-010. (AR 51-52.) Thus, ALJ Greenberg denied plaintiff's applications for benefits at step five. The Appeal Council upheld the denial. (AR 1-7.)

---

[2] "Status post laparoscopic cholecystectomy" refers to a patient's status after surgery to remove the gallbladder.

On January 3, 2014, plaintiff filed a complaint in this District Court, seeking review of the Social Security Commissioner's denial of her benefits applications. (*See Coehoorn v. Colvin,* No. 13-2307-RNB, Dkt. No. 3.) On November 12, 2014, United States Magistrate Judge Robert N. Block issued an "Order Reversing Commissioner and Remanding for Further Administrative Proceedings." (AR 1404-13; *see also Coehoorn,* No. 13-2307-RNB, Dkt. No. 18-16.) Judge Block's Order found, in pertinent part, that the VE's testimony about the other jobs of "small parts assembler" and "production assembler" that the VE opined plaintiff had the ability to perform conflicted with the RFC that ALJ Greenberg had assessed for plaintiff and the descriptions of those jobs in the DOT. (AR 1409-11.) the district court found that the ALJ had failed to adduce persuasive evidence to support the deviation from the DOT job descriptions in light of plaintiff's RFC and remanded the case for further administrative proceedings. (*See* AR 1411-12.)

On remand, a new ALJ, Andrew Verne, conducted a second hearing on September 9, 2015. (*See* AR 1310-20.) A new VE, Mark J. Kelman, testified at the second hearing. (*See* AR 1310.) At that hearing, plaintiff's attorney stipulated that this was a "limited remand" for the purpose of resolving the conflicts with the DOT noted by the Magistrate Judge. (*See* AR 1326.) Plaintiff's attorney also stated:

> we're willing to stip to the RFC that was previously found by [ALJ Greenberg] and even the VE testimony regarding the classification of past relevant work and no transferability of skills.

(*Id.*) Because plaintiff turned 55 in December 2013, her counsel noted that this "makes it an SSI case only at that point because of her date last insured issues." (AR 1327.) ALJ Verne and plaintiff's counsel also agreed that no additional testimony from plaintiff was needed at the second hearing because "the issue is limited to the VE's testimony." (AR 1327.)

4

At the hearing before ALJ Verne, however, the VE testified that the "machine operator" job, *i.e.*, to the job identified by VE Mas at the first hearing, was a "generic title," that did not adequately capture the specific nature of plaintiff's previous jobs. (*See* AR 1329.) The VE said "there's over a thousand of those in the DOT." (*Id.*) The VE commented that plaintiff's description of her duties indicated that "'every day, [she worked with] different machines, different duties, small parts some days, large parts other days,' which makes it even more confusing." (*Id.*) Thus, VE Kelman acknowledged that "the machine operator job varies rather markedly and actually it's very genuine in terms of how it's being described," and he stated, "I just need to know a little more about, were there days where she just did the sedentary aspects of machine operation . . . [and] if there was any training . . . ." (AR 1329-30.)

At the second hearing, plaintiff's attorney also noted that the VE at the first hearing had identified the "machine operator job" as DOT 590.362-014 and argued that "it appears [plaintiff] might have had this hybrid [sic] type of job doing various things . . . [where] she did some days medium and some days sedentary . . . ." (AR 1330.) Plaintiff's attorney, apparently citing to *Valencia v. Heckler,* 751 F.2d 1082, 1086 (9th Cir. 1995), argued that "under the *Valencia* 9th Circuit case, . . . when you look at a hybrid job you have to look at the higher end job. If she did some days medium and some days sedentary . . . you classify it at the higher level." (AR 1330.) In order to provide the additional information the VE needed about her specific duties in her PRW, plaintiff's attorney agreed to allow plaintiff to be put under oath at the second hearing, and the VE questioned her about her duties as a "machine operator." (AR 1331-33.)

Plaintiff testified that she primarily worked with "plastics," and, when asked whether "there were days you just sat and would operate the machine," plaintiff said that "it changed every single day," and "[h]our by hour they could tear that machine down . . . [and] it always changed." (*See* AR 1331-32.) As to her particular tasks she testified

5

You're not just sitting.  You have to take the part, open the door, take the machine off, spray it, take the plastics off the machine, clip it, trim it, and it all has to be done very, very quickly. . . But to your question, every night was different.

(AR 1332.)

Following plaintiff's testimony, VE Kelman said "I think I know a little bit more about what she did and I've looked up that number at 590.362-014."  (AR 1333.)  The VE then testified that the DOT number that plaintiff's attorney and the ALJ had previously identified, DOT 590.362-014, described "an asphalt machine operator," and the VE said "[s]he's not working with asphalt"; "I don't think she did that." (AR 1333.)  The VE further testified, "I don't believe that the prior job title matches what she did realistically at her job."  (AR 1334.)  The VE then opined, based on plaintiff's testimony at that second hearing, that plaintiff's PRW was better-described as a "plastics machine operator," DOT 556.685-082, a "light, unskilled SVP 2" occupation, or a "grinding machine operator," DOT 690.685-194, a "sedentary and unskilled, SVP 2" occupation.  (AR 1334-36.)  The VE also opined that "[t]here's no skills associated with her past relevant work."  (AR 1337.)

Plaintiff's attorney stated that he thought the VE's "testimony . . . is consistent with what my client has indicated that her job was this kind of hybrid job where she was doing anything from sedentary to medium."  (AR 1337.)  Plaintiff's attorney said "It wasn't one specific job, it was just kind of, you know, hybrid." (AR 1337.)  ALJ Verne then posed a hypothetical to the VE about plaintiff's ability to do other work available in the national economy.  (AR 1337-39.)  Using what the ALJ and plaintiff's attorney agreed was the same RFC established by ALJ Greenberg at the first hearing, the ALJ posed a hypothetical that included, among other things, lifting or carrying 20 pounds occasionally and 10 pounds frequently, standing or walking for no more than 2 hours in an 8-hour day, and performing

tasks that were not complex or detailed. (AR 1338.) The VE opined that plaintiff could perform a number of jobs, including: (1) office helper (DOT 239.567-010); (2) "telemarketing representative, sometimes known as appointment setter" (DOT 299.357-014); and (3) "cashier position," which included "fuel island cashier, [] parking lot cashier, [and] courtesy booth cashier" (DOT 211.462-010). (AR 1339-40.)

At the second hearing, ALJ Verne stated that "my understanding of the issue [sic] is that there is past work based on this RFC that [plaintiff] qualifies for. If she doesn't qualify for the past work, then we get into whether she GRIDs [sic] or not under sedentary" (that is, whether plaintiff's RFC would dictate a result at step five of the sequential evaluation under the Medical-Vocational Guidelines "grids" at 20 C.F.R. Part 404, Subpart P, Appendix 2). (AR 1341.) Plaintiff's attorney stated "[i]t's our position that, again, her past work was a hybrid job ranging from sedentary to medium . . . but given my client's age at the time of the onset, which was 51 years old, GRID Rule 201.10 would direct a finding of disabled." (AR 1342.) The ALJ then confirmed that plaintiff contention was that because her PRW was a "hybrid" job, the ALJ would have to assume a higher medium exertional level for the job, and plaintiff would therefore be precluded from doing such medium-level jobs. (AR 1342.) The VE then stated that plaintiff's PRW, as she actually performed it, included "the full range . . . from sedentary to medium . . . and I wouldn't quibble about that." (AR 1343.)

## SUMMARY OF ADMINISTRATIVE DECISION

Following that second hearing, on December 17, 2015, ALJ Verne issued a new opinion, denying plaintiff's benefits applications at both step four and step five. (*See* AR 1310-20.)

In the second proceeding, ALJ Verne found, as did the first ALJ, that plaintiff had six severe impairments: (1) fibromyalgia, (2) migraine headaches, (3) a history of a "left foot

crush injury"; (4) "status post laparoscopic cholecystectomy"; (5) a history of hepatitis C; and (6) depression. (*See* AR 1312.) ALJ Verne also found that plaintiff's impairments did not meet or equal any "listed" impairment. (AR 1312-13.) This time, however, the new ALJ found that plaintiff had the RFC "to perform less than the full range of light work," including standing and/or walking for no more than 2 hours in an 8-hour day, "occasional" postural activities and overhead reaching, and a limitation to "tasks that are noncomplex and nondetailed." (AR 1313-14, citing 20 C.F.R. §§ 404.1567(b), 416.967(b).)

ALJ Verne found that plaintiff retained the RFC to perform her PRW as a "plastics machine operator," DOT 690.685-194, light, unskilled: SVP[3] 2, or a "grinding machine operator," DOT 556.685-082, sedentary, unskilled: SVP 2. (*See* AR 1318.) Specifically, at step four, based on the VE's testimony, the ALJ found that plaintiff was able to perform the identified PRW "as actually and generally performed." (AR 1318.)

ALJ Verne also determined that plaintiff's applications should be denied at step five. (*See* AR 1319-20.) He concluded, in light of plaintiff's RFC for light work with certain additional limitations and based on the VE's testimony, that plaintiff could perform the following other jobs available in significant numbers in the national economy: (1) office helper, DOT 239.567-010; (2) "telemarketing representative, sometimes known as appointment setter," DOT 288.357-014; and (3) "cashier, specifically fuel island cashier, parking lot cashier and courtesy booth cashier," DOT 211.4462-010. (AR 1319-20.)

Accordingly, ALJ Verne found that plaintiff had not been under a disability from July 2, 2010, the alleged onset date, through the date of the second ALJ's decision on December 17, 2015. (*See* AR 1320.)

---

[3] Specific Vocational Preparation, as defined in Appendix C of the DOT.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error,

'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

## I.    Disputed Issue

The parties' Joint Stipulation identifies a single disputed issue:  "Whether the ALJ's findings that [plaintiff] can perform past relevant work or alternate work that exists in significant numbers in the national economy is supported by substantial evidence."  (Joint Stip. at 5.)

The issue as presented appears to contains two sub-issues relating to ALJ Verne's findings at steps four and five:  (a) can plaintiff perform her past relevant work of "plastics machine operator," DOT 690.685-194, or "grinding machine operator," DOT 556.685-082, either as plaintiff "actually" performed those jobs, or as those jobs are "generally" performed in the national economy; and (b) can plaintiff perform the "other work" in the national economy that the VE identified and the ALJ relied upon, that is, the jobs of (1) office helper, DOT 239.567-010; (2) "telemarketing representative/appoint setter," DOT 288.357-014; or (3) "cashier, specifically fuel island cashier, parking lot cashier and courtesy booth cashier," DOT 211.4462-010.  (*See* Joint Stip. at 5-13.)

For the reasons discussed below, the Court finds that the ALJ Verne's decision denying plaintiff's applications at step five is supported by substantial evidence and free of legal error.

\\

\\

\\

## II.  **Step Four — Ability to Perform Past Relevant Work**

### A.  The Parties' Arguments Regarding Plaintiff's PRW at Step Four

Plaintiff contends that her PRW was a "hybrid" job because she performed that job "at various levels of exertion from sedentary to medium." (Joint Stip. at 11.) Plaintiff specifically challenges defendant's assertion that "based upon the assessed RFC, [plaintiff] can perform the occupation of machine operator [sic] as generally performed in the national economy." (Joint Stip. at 11.) Plaintiff argues that "although the DOT described the occupation of machine operator as sedentary, there is no credible evidence of record that Coehoorn performed the occupation of machine operator at the sedentary level of exertion 'most of the time,'" since "[she] testified that the exertional level changed every single day." (Joint Stip. at 12.)

Plaintiff points out that the Social Security Administration's "Program Operations Manual System" ("POMS") provides guidance on how an ALJ should evaluate a "composite job," that is, a hybrid job, at step four. (*See* Joint Stip. at 5-6, citing POMS 25005.020B, available at https://secure.ssa.gov/poms.nsf/lnx/042005020.) Under the POMS guidelines, plaintiff argues, "if you [*i.e.,* the ALJ] determine that PRW was a composite job, you must explain why," and directs that "[a] composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'" (Joint Stip. at 5-6, quoting POMS 25005.020B.) Finally, plaintiff argues that "plaintiff's ability to do part of a job is not the same as the ability to perform past relevant work." (Joint Stip. at 6 (citing *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985).)

In *Valencia*, the Ninth Circuit held that when a job involves different degrees of physical exertion, the ALJ cannot "classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations[.]" *Id.* at 1086. The

claimant in *Valencia* had PRW as an agricultural laborer, where in addition to "medium" exertional work in the fields, she also sometimes sorted tomatoes, which was classified as "light" exertional level. *Id.* The circuit court held that the Appeals Council erred as a matter of law in determining that the *Valencia* claimant's PRW was "sorting of tomatoes" when this light work was "one of many tasks she performed at the various farms where she was employed as an agricultural worker. *Id.*

Defendant argues in response that *Valencia* is not controlling here and the ALJ did not err in finding that Plaintiff could perform her PRW. (Joint Stip at 7.) As Defendant correctly notes, plaintiff "does not dispute that she could perform the sedentary work of a grinding machine operator." (Joint Stip. at 7.) Defendant argues that, based on the VE's testimony, "the ALJ properly found that Plaintiff could perform her prior work as a grinding machine operator as actually performed [sic], as it is undisputed that her RFC allows her to perform sedentary work." (Joint Stip. at 7.)[4] Defendant apparently abandons reliance on the ALJ's finding at step four that plaintiff could perform the light-work job of "plastics machine operator" as "generally performed." (*See* Joint Stip. at 7-11.)[5]

---

[4]     As discussed more fully below, this Court assumes that defendant mistakenly stated "as actually performed" here, rather than "as generally performed."

[5]     Defendant appears to concede that the "plastics machine operator" job, DOT 556.685-082, does not qualify as PRW that plaintiff could "generally" perform because that job is rated as light work. (*See, e.g.,* Joint Stip. at 7-9.) Because plaintiff has an RFC for "less than the full range of light work" (*see* AR 1313-14), the DOT description of the plastics machine operator job deviates from plaintiff's limited-light RFC, and, therefore, the DOT description cannot be relied on at step four, whereas, if there are a significant number of such jobs available notwithstanding plaintiff's limited-light RFC, a disability finding may nevertheless still be precluded at step five based on the plastics machine operator job. *See, e.g., McLaughlin v. Colvin,* No. CV 14-9908-PLA, 2015 WL 5567755, at *6 (C.D. Cal. Sept. 22, 2015) (where plaintiff's PRW deviates from DOT description, ALJ may proceed to step five to determine, with VE if necessary, whether jobs exist in significant numbers in regional and national economies that plaintiff can still perform).

Further, Defendant contends that *Valencia* is distinguishable and at step four the PRW analysis in this case is controlled by the Ninth Circuit's recent decision in *Stacy v. Colvin*, 825 F.3d 563 (9th Cir. 2016.) (Joint Stip. at 8.) In *Stacy*, the Ninth Circuit, while acknowledging that it was difficult to reconcile the *Valencia* line of cases with the Social Security Rulings explaining how to apply the "generally performed test," explained that "the 'generally performed test' is designed for situations where a claimant's past job was especially demanding when compared with industry standards." *Stacy*, 825 F.3d at 569; *see also* Joint Stip. at 8.

### B. Applicable Law

A claimant has the burden at step four to prove that she cannot perform her past relevant work. *See Stacy,* 825 F.3d at 567 (citing *Lewis v. Barnhart,* 281 F.3d 1081, 1083 (9th Cir. 2002)). An ALJ may use either the "actually performed test" or the "generally performed test" when assessing a claimant's ability to perform past work. *Id.* at 569 (citing SSR 82-61, 1982 WL 31387 (1982)). The Social Security ruling explains the application of the "generally performed test" as follows:

> A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'

SSR 82-61, 1982 WL 31387 (1982).

C. <u>The ALJ's Denial at Step Four is Supported by Substantial Evidence</u>

Plaintiff asserts that in denying plaintiff's applications at step four, the ALJ's use of the "generally performed" aspects of the grinding machine job effectively cherry-picked individual requirements of plaintiff's PRW, which was a "composite" job that demanded light and medium exertionary levels, and impermissibly reduced her PRW to the "least demanding function" of her PRW, in violation of *Valencia v. Heckler*. (*See* Joint Stip. at 5-7, 11-13.) The Court finds plaintiff's arguments unpersuasive for a number of reasons.

Plaintiff testified how she "actually performed" her "hybrid" or "composite" job, indicating that she was "not just sitting" and "every night was different." (AR 1332.) But plaintiff does not effectively address why the VE's and the ALJ's assessment that she could perform her PRW as "generally performed" was incorrect. (*See, e.g.,* Joint Stip. at 5-6, 11-13.) In *Stacy,* the Ninth Circuit stated that "the 'generally performed test' is designed for situations where a claimant's past job was especially demanding when compared with industry standards." *Stacy,* 825 F.3d at 569 (citation omitted). Furthermore, where the claimant performed a "composite job" that has significant elements of two or more occupations, and that "composite job" has no direct counterpart in the DOT, it may be possible that there is no DOT job description that corresponds to how that job was "generally performed" in the national economy. *See, e.g.,* SSR 82-61.

Nevertheless, an ALJ is authorized to use a VE to evaluate "how a particular job is usually performed" and evaluate that job "according to the particular facts of each individual case." *See* SSR 82-61. Consequently, a VE or an ALJ may properly determine at step four that the demands and duties of a claimant's PRW correspond to the "industry standard" of a job description in the DOT, even where the claimant "actually performed" that job at a higher exertional level, and find that the claimant can perform that job as it was "generally performed" in the national economy, so long as that determination is supported by

14

substantial evidence.  *See Stacy,* 825 F.3d at 570-71.  In other words, if substantial evidence supports the finding that a job identified by the VE and relied upon by the ALJ is equivalent as "generally performed" to the PRW, a denial at step four may be upheld.  *See id.*

Here, the "grinding machine operator" job (DOT 690.685-194), is the relevant job for PRW purposes, rather than the generic "machine operator job" identified in the first proceeding.  (*See* AR 1318; AR 1335.)  The complete DOT title for this job is "Grinding-Machine Operator, Automatic."  The DOT describes the grinding machine operator job as "sedentary work" that "may involve walking or standing for brief periods of time," and may include grinding of "blanks, and molds."  *See* DOT 690.685-194.

The VE examined plaintiff at the second hearing, stating that "in terms of training . . . you were a machine operator."  (AR 1331.)  When the VE asked plaintiff to describe her training, she said "[n]one."  (*Id.*)  Plaintiff testified how she learned the job saying, "[t]hey would have a list of things that we needed to do on each and every machine, and so it would tell you exactly what you had to do with a part," but she added that "maybe the first week my supervisor did work with me."  (*Id.*)  Plaintiff also testified that "plastics" was the primary material that she worked with, and she sometimes sat at a machine for up to three hours at a time.  (AR 1331-32.)  As to her specific duties, Plaintiff said "[y]ou have to take the part, open the door, take the machine off [sic], spray it, take the plastics off the machine, clip it, trim it, and it all has to be done very, very quickly."  (AR 1332.)  Plaintiff also described working on a variety of plastic items, saying "[i]t was like medical – they would have this huge circle that had dividers in it and you would take it off this big machine and then clip it, and then you'd trim it, and then you would put labels on it"; and she said that "[t]here was a lot of medical stuff like the light things were like asthma [sic]," and "[w]e would add parts to it, it would drop, we'd trim it, we'd clip it."  (AR 1333.)

As defendant persuasively argues, this case is distinguishable from *Valencia*, and more akin to *Stacy,* because the ALJ did not simply "isolate" the "least demanding function" of plaintiff's PRW, and then find a sedentary job that included that function. Rather, the ALJ confronted a situation where the plaintiff actually performed her PRW at a more demanding level than compared with industry standards for the sedentary, unskilled occupation. *See Stacy,* 825 F.3d at 569 (citing, *inter alia, Valencia*). Plaintiff does not dispute that she can perform all of the sedentary functions described in the "grinding machine operator" job, DOT 690.685-194, and she does not explain why that job is not equivalent to her PRW. Rather, she argues that if her suitability for that job were considered at step five, she would have to be found "disabled" because that is a sedentary job, the VE only identified sedentary unskilled positions, and she would therefore "grid out" under the Medical-Vocational Guidelines because of her age and have to be found disabled. (Joint Stip. at 6.) This argument, however, seems to conflate the ALJ's obligations at step four and five. Indeed, as the Ninth Circuit emphasized in *Valencia*, "the statute and regulations direct the Secretary to first determine whether a disability claimant can perform his past job or occupation *before* examining whether the skills and training acquired by the claimant through his previous work experience have equipped him to undertake other similar or related jobs." *Valencia,* 751 F2d. at 1087 (emphasis in original).

Plaintiff's reliance on POMS 25005.020B is also unavailing. (*See* Joint Stip. at 5.) The Social Security Administration's website sets forth the POMS, and states that "POMS is a primary source of information used by Social Security employees to process claims for Social Security benefits." *See* https://secure.ssa.gov/apps10. The Ninth Circuit has stated that the POMS "may be entitled to respect . . . to the extent it provides a persuasive interpretation of an ambiguous regulation," but the POMS "does not impose judicially enforceable duties on either this court or the ALJ." *Kennedy v. Colvin,* 738 F.3d 1172, 1177-78 (9th Cir. 2013) (citing, *inter alia, Carillo-Yeras v. Astrue,* 671 F.3d 731, 735 (9th Cir. 2011) (internal punctuation and citations omitted). *See also Lockwood v. Comm'r Soc. Sec.*

*Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010) ("POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ."). Furthermore, because POMS is only intended as an internal guideline for adjudicators at the initial or reconsideration levels, and is not intended for ALJs, it has no controlling force here. *See Ziff v. Chater,* 930 F. Supp. 1356, 1359 (N.D. Cal. 1996) (POMS is for internal SSA use only, and does not bind the SSA, and has no legal force in District Court Social Security proceeding; and accordingly POMS cannot support relief for plaintiff) (citations omitted); *see also* 2012 No. 1 Current Soc. Sec. News 4 ("POMS is intended as a guidance for adjudicators at the initial or reconsideration levels – not for ALJs."). The POMS guideline cited by plaintiff, DI 25005.020, specifically addresses SSR 82-62, not SSR 82-61, and that POMS section is entitled "Past Relevant Work (PRW) as the Claimant Performed It." *See* POMS DI 25005.020. Social Security Ruling 82-62 is a more general discussion of PRW than SSR 82-61, and is in fact entitled "Claimant's capacity to do past relevant work, in general." *Cf.* SSR 82-62 with SSR 82-61. While SSR 82-62 cites to SSR 82-61, SSR 82-62 does not explain the differences between PRW as "actually performed" and "generally performed" as SSR 82-61 does, and so the POMS' commentary on SSR 82-61 has little relevance here.

As noted, the DOT description of a grinding machine operator job describes a job that is sedentary and only requires minimal training, and both of those requirements are within plaintiff's RFC. *See* DOT 690.685-194. The DOT describes the duties of the grinding machine operator as follows:

Tends machine that removes bark (rough exterior of pearl-shell) from back of pear button blanks, and levels back and face of blanks. Places blanks face-down on conveyor belt that feeds blanks between steel plate and abrasive wheel. Inverts blanks by hand, and repeats operation to level faces. May tend machine that inverts blanks automatically. May insert blank in holder of manually

17

controlled machine and pull on leverage bar to force blank against abrasive
wheel.

DOT 690.685-194. Thus, it appears that the requirements of plaintiff's PRW working with
plastics are not inconsistent with what the DOT describes as essentially a button-producing
job. Indeed, the VE specifically testified that the work functions would be similar to what
plaintiff did in her previous plastics position:

> There's also a grinding machine operator, which she would also, you know,
> clean plastics and make sure that they were smooth and get rid of any of the
> imperfections . . . That's 690.685-194. That's sedentary and unskilled, SVP: 2.
> And again, it parallels what she indicated with regard to being observed for a
> week or having no training and just looking at a checklist of what she should
> do.

(AR 1336.) Accordingly, the ALJ's determination at step four that plaintiff's PRW is
equivalent to the grinding machine operator job is supported by substantial evidence.

The other job identified by the VE and relied upon by the ALJ at step four, the
plastics machine operator job, appears to equate to plaintiff's actually-performed PRW. The
DOT describes that job as in the "Fabricated Plastic Products Industry," and gives an
alternate title for that job of "Molder, Vacuum." *See* DOT 556.685-082. The DOT states
that a plastics machine operator "[t]ends machine that molds thermoplastic sheets into plastic
products," "[r]emoves product from molds and reloads thermoplastic sheet into machine,"
and "[m]ay trim excessive molding material from products using knife, scissors, or
bandsaw." *See id.* However, as noted above, because the parties apparently concede that
that job is precluded because it is light work, and plaintiff's RFC is only for "less than the
full range of light work," that job cannot be relied upon at step four. Furthermore, because

the ALJ did not elicit any available job numbers from the VE about that job with a limited-light exertional restriction, the plastics machine operator job cannot be relied upon by the ALJ at step five either.

Nevertheless, even if the ALJ erred at step four in concluding that plaintiff can perform her PRW based on the VE's testimony, any error was harmless because the ALJ properly concluded at step five, that plaintiff's RFC will permit her to perform other jobs that exist in substantial numbers in the national economy.  (AR 1319.)

## III.  **Step Five Denial**

### A.  The ALJ's Opinion and the Parties' Arguments

The ALJ stated, as an alternative to his step four analysis, that there were other jobs that exist in significant numbers in the national economy that plaintiff could perform, and, therefore, plaintiff's application could also be denied at step five.  (*See* AR 1319-20.)  The ALJ stated that "[t]o determine the extent to which [plaintiff's] limitations erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]." (AR 1319.)  The VE identified three jobs:  (1) office helper, DOT 239.567-010, for which, based on the VE's testimony, the ALJ stated there were 100,000 sedentary, unskilled jobs; (2) "telemarketer representative," sometimes also known as "appoint setter," DOT 299.357-014, a sedentary job with 300,000 positions in the national economy; and (3) "cashier," which further broke down into "fuel island cashier, parking lot cashier, and courtesy booth cashier," and the ALJ described as a light job with 100,000 positions in the national economy.  (*See* AR 1319-20.)  The ALJ also stated that "[p]ursuant to SSR 00-4p, the undersigned has determined that the [VE's] testimony is consistent with the information contained in the [DOT]."  (*Id.*)

Plaintiff argues that, in considering plaintiff's ability to do other work for purposes of step five, the VE only identified "unskilled sedentary occupations," and plaintiff argues that "[b]ecause Coehoorn was 52 years old as of July 2, 2010, the alleged onset date, the availability of unskilled sedentary work is irrelevant to the decision." (Joint Stip. at 6, citing, *inter alia,* "The Grids" at 20 C.F.R. part 404, subpart P, Appendix 2, Rule 201.10 and SSR 83-5a.) Plaintiff argues that the ALJ erred at step five because plaintiff's RFC is for limited light work, and the ALJ did not elicit an explanation from the VE to explain how plaintiff could perform the DOT jobs that the VE identified, which plaintiff argues all posit the full range of light work. (*See* Joint Stip. at 13, citing, *inter alia,* SSR 00-4p and *Massachi v. Astrue,* 486 F.3d 1149, 1152-53 (9th Cir. 2007).

Defendant argues that "[p]laintiff's argument fails because the ALJ in fact identified the light occupation of parking lot cashier, DOT 211.462-010." (Joint Stip. at 10, citing AR 1320.) Defendant notes that "[t]he vocational expert testified that plaintiff, with her RFC, could perform this position and that 100,000 such positions existed in the national economy." (Joint Stip. at 10, citing AR 1338-41.)

A.    Applicable Law

If the Commissioner has found at step four that the claimant's RFC does not enable the claimant to do any PRW, at step five the Commissioner has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the national economy (which may include the region where the claimant lives or in several regions in the country). *See* 20 C.F.R. §§ 404.1560(c)(1)-(2), 416.960(c)(1)-(2); *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999). An ALJ may satisfy this burden by, among other things, calling on a VE to provide testimony about the number of "significant" jobs in the national economy. *See* SSR 00-4p.

Where a VE's testimony relies on the DOT for information about the requirements of work in the national economy that a claimant can perform in the light of the claimant's RFC, and the VE's testimony conflicts with the information provided in the DOT, the ALJ has an affirmative responsibility to ask about the VE about the conflict, and to obtain a reasonable explanation for the conflict. *See* SSR 00-4p; *Bray,* 554 F.3d at 1234 (citing SSR 00-4p). The ALJ must then explain in the decision how the conflict with the DOT was resolved. *See id.*

B. <u>Analysis</u>

At the hearing, ALJ Verne gave the VE hypotheticals using the RFC for plaintiff that the ALJ set forth in his opinion, that is, an RFC for "less than the full range of light work," including, among other things, restrictions to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking no more than 2 hours in an 8-hour day; and sitting for 6 hours in an 8-hour day. (*See* AR 1313, 1338-39.) The VE then identified three jobs: officer helper; telemarketer/appointment setter; and cashier. (*See* AR 1339-41.) The VE testified that the office helper job could be performed at either the light or sedentary levels, and, at the sedentary level, there were 100,000 such jobs in the national economy. (AR 1339.) The telemarketer/appointment setter job was sedentary and semi-skilled, with 300,000 positions available. (AR 1340.) The VE opined that, within the "cashier" job description, "the cashier positions I would reference would be the fuel island cashier, the parking lot cashier, [and] the courtesy booth cashier," and he said those jobs were "light per the DOT." (AR 1340.) The VE testified, "for the positions that I am mentioning [*i.e.,* the three cashier sub-positions] . . . I would reduce the numbers down to approximately 100,000 on a national basis." (AR 1340-41.)

The DOT describes the "office helper" job as light work (*see* DOT 239.567-010); the "telemarketing/appointment setter" job (which the DOT titles as "telephone solicitor") as

sedentary work (*see* DOT 299.357-014); and the "cashier" jobs as light work. (*See* DOT 211.462-010.) It would appear then, that the record is undeveloped on the issue of how many light-level office helper jobs exist in the national economy, since the VE said at the hearing that, while that job could be performed at both the sedentary and light levels, the eroded numbers he was providing were for 100,000 jobs at the sedentary level. (*See* AR 1339.)

Substantial record evidence supports the ALJ's findings on the cashier jobs, and, therefore, supports the ALJ's denial at step five based on that job. Indeed, as the Ninth Circuit explained in *Stacy*, a claimant can perform prior work as it was "generally performed," even though the prior work may have involved at times work at higher exertional levels. *See Stacy*, 825 F.3d at 563; *see also* Joint Stip. at 8.

The VE stated that the numbers he was providing for the cashier job were "reduced down" based on the ALJ's RFC hypothetical. (*See* AR 1340-41.) The VE found 100,000 such cashier jobs "on a national basis," and that is clearly a significant number of jobs and adequate to support the ALJ's finding at step five. *See, e.g., Tommasetti v. Astrue,* 533 F.3d 1035, 1042-43 (9th Cir. 2008) (100,000 positions nationally for job is significant number, citing 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)). Plaintiff does not dispute the accuracy of the ALJ's RFC determination, or question the VE's expertise or the number of jobs that the VE opined exist.

Accordingly, substantial evidence supports the ALJ's findings at step five regarding the cashier jobs, and the decision of the Commissioner must be affirmed. *See Tommaseti,* 533 F.3d at 1042-43 (even where ALJ's step four determination was in error, error is harmless where ALJ's step five determination that other work exists in national economy in significant numbers was supported by VE's testimony that 100,000 positions for job exist in national economy).

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: April 19, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE